**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JOHN DOE,

      Plaintiff

v.

TRANSUNION RENTAL SCREENING SOLUTIONS, LLC,

      Defendant

---

**COMPLAINT**

(JURY TRIAL DEMANDED)

Plaintiff John Doe ("Plaintiff"), by and through his attorneys, brings the following

Complaint and states as follows:

**INTRODUCTION**

1.      This is an individual action for damages, costs and attorneys' fees brought

against TransUnion Rental Screening Solutions, LLC ("Defendant" or "TURSS") pursuant

to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files

on consumers on a nationwide basis. It sells consumer reports generated from its

database and furnishes these consumer reports to landlords who use the reports to make

decisions regarding whether to rent to certain consumers.

3.      Defendant falsely reported to Plaintiff's potential landlord that he was a

felon. In fact, Plaintiff's arrest and charge had been sealed pursuant to an Order to Seal

Records Pursuant to Section 943.059 Florida Statutes, and Florida Rules of Criminal

1

Procedure 3.692 ("Order to Seal Records"), which was signed by a Circuit Court Judge in Duval County, Florida. Moreover, Plaintiff proactively provided Defendant with a copy of the Order to Seal Records via email four days before it assembled and furnished the inaccurate consumer report to his potential landlord. But Defendant ignored Plaintiff's communication and published the inaccurate record regardless.

4.      Defendant's inaccurate reporting cost Plaintiff his ability to rent the property of his choice that was suitably accommodating of his living needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

5.      Defendant's inaccurate report could have been easily remedied had Defendant consulted current public record prior to issuing Plaintiff's report to his prospective landlord.

6.      Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Its failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

7.      As a result of Defendant's conduct, Plaintiff brings a claim pursuant to § 1681e(b) of the FCRA.

### THE PARTIES

8.      Plaintiff John Doe is a natural person residing in the City of Jacksonville, State of Florida, and is a "consumer" as protected and governed by the FCRA.

9.      Defendant TransUnion Rental Screening Solutions, LLC ("TURSS") is a Delaware corporation doing business throughout the United States, including in the State of Florida, and has a principal place of business located at 5889 South Greenwood Plaza

Boulevard, Suite 201, Greenwood Village, CO 80111.  It is a wholly-owned subsidiary of

TransUnion, LLC, which is wholly owned by TransUnion Intermediate Holdings, Inc.

10.     Among other things, Defendant sells consumer reports, often called

background checks and credit reports, to landlords for their use in deciding whether to

rent to a prospective tenant. These reports are sold to landlords in connection with a

business transaction initiated by the consumer.

11.     Defendant is a consumer reporting agency as defined at 15 U.S.C.

§ 1681a(f) because for monetary fees, it regularly engages in whole or in part in the

practice of assembling and/or evaluating consumer credit information or other information

on consumers for the purpose of furnishing consumer reports for tenant screening

purposes to third parties, and uses interstate commerce, including the Internet, for the

purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.

§ 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any

appropriate court of competent jurisdiction.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant "resides" in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

14.     Despite its name, the Fair Credit Reporting Act covers more than just credit

reporting, it regulates all consumer reports such as the tenant screening report prepared

in Plaintiff's name.

3

15.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks like TURSS are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

16.     The FCRA provides a number of protections for housing applicants who are subject to background checks.

17.     The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

18.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

### Defendant's Inaccurate Resident Screening Report

19.     On November 15, 2018, a Circuit Court Judge in Duval County, Florida issued an Order to Seal Records Pursuant to Section 943.059 Florida Statutes, and Florida Rules of Criminal Procedures 3.692, concerning an arrest of Plaintiff dating back to September 2015.

20.     In or around mid-December 2018, Plaintiff sought to rent an apartment in the greater Hollywood, Florida area.

21.     In looking for a rental property, Plaintiff found only one that met his needs, an apartment unit just north of Hollywood in Dania Beach ("the Dania Beach Unit").

22.     Plaintiff had a preference for renting the Dania Beach Unit because he had relocated from Jacksonville, Florida to start working a new job with Ultimate Software in early December 2018, and the Dania Beach Unit was in a convenient location within approximately 20 miles of his new office in Weston, Florida.

23.     The Dania Beach Unit was managed by non-parties Buildium East ("Buildium") and Prestige Management Realty, LLC ("Prestige Management").

24.     In or around mid-December 2018, Plaintiff contacted Prestige Management and spoke with a realtor, expressing his interest to rent the Dania Beach Unit for $1,050.00 per month.

25.     On or about December 27, 2018, the realtor, on behalf of Prestige Management, emailed Plaintiff a rental application and requested that he complete and return the rental application along with payment of $60.00, which would cover fees for the application and a background check.

26.     While reviewing the rental application, Plaintiff noticed that non-party Buildium, who offers property management software products, was listed in the section containing information related to the background check.

27.     Plaintiff, having previously fallen victim to an unrelated inaccurate background check, decided to be proactive and contacted Buildium by telephone. A Buildium representative informed Plaintiff that TURSS would be furnishing all information included in the background check.

28.     Thereafter, Plaintiff contacted TURSS by telephone and spoke with a representative, Edgar Tenas ("Mr. Tenas"). Plaintiff explained that he had previously fallen victim to an unrelated inaccurate background check and wanted to offer to provide

a copy of the Order to Seal Records to avoid any possibility of another inaccurate background check that might prevent him from being allowed to rent the Dania Beach Unit. Mr. Tenas stated that he understood Plaintiff's concern and asked him to email TURSS at TURSSdispute@transunion.com, and to include his personal information, an explanation of the situation, and any relevant, corroborating documentation.

29.     On December 27, 2018, Plaintiff sent an email to TURSSdispute@transunion.com explaining that he was going to be the subject of a TURSS background check in connection with an apartment rental application and wanted to ensure that his sealed history was not included, as it had previously been an issue with another background check company. Plaintiff also noted that the background check would be performed by TURSS on Monday, December 31, 2018. Plaintiff attached a copy of the Order to Seal Records, dated November 15, 2018.

30.     Later that same day, Plaintiff completed the rental application and emailed it back to the realtor, providing his credit card information for payment of the $60.00 application and background check fee.

31.     Prestige Management contracted with TURSS to provide resident screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

32.     On December 31, 2018, six weeks after Plaintiff's criminal record had been ordered sealed, Prestige Management obtained a consumer report on Plaintiff from TURSS, which it calls a "Resident Screening Report" ("the Report"), which included a compilation of Plaintiff's credit report, a criminal record report, and eviction report.

33.     The Report is a consumer report regulated by the FCRA.

34.     The Report indicated that Plaintiff had been charged with the sale, manufacture or delivery of cocaine.

35.     TURSS also reported both that Plaintiff had pled guilty to the charge and that adjudication had been withheld. TURSS failed to report that Plaintiff had never been adjudicated guilty, and that all records pertaining to the charge had subsequently been sealed. TURSS's report created the false impression that Plaintiff had been convicted of felony drug charges when, in fact, he was never convicted, and no longer faced any risk of being adjudicated guilty because the record had been sealed.

36.     TURSS's reporting was inaccurate. The aforementioned criminal charge should not have been included in Plaintiff's Report because it was sealed. So, reporting the charge as though it was a matter of public record at the time of the report was misleading. Further, reporting that Plaintiff had 1) pled guilty to the charge, and 2) had his adjudication withheld was also misleading, because at the time of the report, the record had been sealed and Plaintiff was no longer at any risk of being adjudicated guilty. Instead, Plaintiff's adjudication was withheld, which meant that the judge ordered probation but **did not declare Plaintiff guilty of any criminal offense**. Once Plaintiff had complied with all terms of his original arrangement with the State, which included completing 14 months of probation, he submitted a Petition to Seal, which was granted by court order, and his record was wiped clean.

37.     TURSS's report was inconsistent with the FCRA's requirement of maximum possible accuracy. Records like Plaintiff's are sealed for good reason, and it is not accurate to report a record as though it has not been sealed when, in fact, it has.

38.     On December 31, 2018, Plaintiff also received a copy of TURSS's inaccurate report.

39.     In approximately five minutes on the internet, Plaintiff was able to pinpoint the flaw in TURSS's reporting: TURSS failed to consult current public record in Duval County, Florida, which indicated that he did not have a criminal history.

40.     Plaintiff was humiliated that his potential landlord now thought he was a convicted felon, especially considering that he had truthfully stated in his rental application that he was not a convicted felon.

41.     After receiving TURSS's Report, the realtor Plaintiff had previously been speaking with cut off contact with Plaintiff.

42.     On January 2, 2019, Plaintiff sent an email to TURSS disputing the inaccurate information contained within his Report.

43.     Later that same day, a representative from TURSS, Luisa Noches ("Ms. Noches"), responded to Plaintiff's email dispute apologizing for any confusion and informed him that the criminal record contained within his Report had been requested to be removed and that it could take up to 5-7 business days for it to be completed.

44.     On January 10, 2019, Plaintiff received mail correspondence from TURSS informing him that after further investigation, the criminal record contained within its database, 6-2015-CF-008043-AXXX-MA, had been confirmed as inaccurate, incomplete, or non-public record information based on additional record details obtained from the Florida, Duval County Circuit Court. TURSS attached a copy of a corrected report that was marked as completed on January 10, 2019.

45.     In the days that followed, Plaintiff made numerous attempts to contact the realtor with Prestige Management by telephone. When Plaintiff eventually got a hold of her, he informed her that his Report had been corrected by TURSS. The realtor informed Plaintiff that the Owner of the Dania Beach Unit had determined that Plaintiff was ineligible for tenancy because he had a criminal record.

46.     As a result of the erroneous information contained within TURSS's Report, Plaintiff had to continue living in a hotel up until he obtained a rental unit in Oakland Park, Florida at the end of January 2019.

47.     But for TURSS's inaccurate Report, Plaintiff's rental application would have been accepted by Prestige Management and he would have been granted tenancy at the Dania Beach Unit he desired to rent.

48.     TURSS, and its parent company, TransUnion LLC ("TransUnion"), have been sued many times for its failure to use reasonable procedures to assure that the rental-purposed consumer reports it sells are maximally accurate.  TURSS knows that its process for obtaining and accurately reporting, updating, and investigating criminal public records is so shoddy that it leads to material inaccuracies.  TURSS's parent company, TransUnion, has been admonished by at least one federal court that it doesn't comply with the FCRA.

49.     Among many other cases, for instance, a jury recently returned a verdict in favor of plaintiffs against TransUnion for its failure to use reasonable procedures to assure maximum possible accuracy in erroneously reporting that the plaintiffs in that case were terrorists, money launderers, and narcotics traffickers on the Office of Foreign Asset Control's "blocked persons" list. *Ramirez v. TransUnion, LLC*, No. 3:13CV632 (N.D. Cal.).

50.     TURSS doesn't have a reasonable procedure in place to assure maximal accuracy because it wouldn't make as much money if it implemented such procedures. It collects information from third party vendors, which it repackages and sells as its rental screening products.

51.     TURSS has access to TransUnion's databases, which contain the name and address of substantially all of the U.S. credit-active population, a listing of their existing credit relationships, and their timeliness in repaying debt obligations. TransUnion also has alternative credit source information such as rental payments and utility payments, information from courts, government agencies, and other public records including suits, liens, judgments, bankruptcies, professional licenses, real property, vehicle ownership, other assets, driver violations, criminal records, and contact information.

52.     Despite knowing that its procedures are unreasonable and do not assure the maximal accuracy required by the FCRA, TURSS persists in utilizing procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Mr. Juliano.

53.     The injuries suffered by Plaintiff as a direct result of TURSS's erroneous reporting are the type of injuries that the FCRA was enacted to address.  At common law, TURSS's conduct would have given rise to causes of action based on defamation and invasion of privacy.

54.     As a direct result of TURSS's conduct, Plaintiff has suffered these injuries resulting in damages, including the inability to rent the unit he desired, the expenditure of time and money looking for another unit and trying to correct TURSS's erroneous Report;

damage to his reputation; physical injury as a result of emotional distress; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

### CLAIM FOR RELIEF
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

55.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-54, above.

56.     Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

57.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

58.     In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

59.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)     Determining that Defendant negligently and/or willfully violated the FCRA;

b)      Awarding actual damages, statutory damages, and punitive damages as
provided by the FCRA;

c)      Awarding reasonable attorneys' fees and costs as provided by the FCRA;
and

d)      Granting further relief, in law or equity, as this Court may deem appropriate
and just.

## DEMAND FOR JURY TRIAL

60.     Plaintiff demands a trial by jury.

Dated:          April 15, 2019

S/ Hans W. Lodge
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
hlodge@bm.net

Matthew R. Osborne
MATTHEW R. OSBORNE, PC
11178 Huron Street, Suite 7
Northglenn, CO 80234
Telephone: (303) 759-7018
matt@mrosbornelawpc.com

*ATTORNEYS FOR PLAINTIFF*